UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:24-CR-192 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| DIEGO EZEQUIEL GARRO | ) | |
| | ) | |
| | ) | JULY 8, 2025 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 42)**

Kari A. Dooley, United States District Judge:

On October 2, 2024, a federal grand jury returned a seven-count indictment charging Defendant Diego Ezequiel Garro with Firearms Trafficking in violation of Title 18 United States Code Section 933(a)(2) and 933(b) (Counts One, Two, Five, and Six); Possession with Intent to Distribute Controlled Substances in violation of Title 21, United States Code Section 841(a)(1) and (b)(1)(C) (Counts Three and Seven); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18 United States Code Section 924(c)(1)(A)(i) (Count Four).  On April 5, 2025, Defendant filed a Motion to Suppress evidence seized from his vehicle on February 18, 2023 as "fruits" of an unconstitutional search.  ECF No. 42.  The Government opposes the motion.  *See* ECF No. 46.  For the following reasons, the Motion to Suppress is **DENIED**.

**The Stop, Arrest, and Search**

The events of February 18, 2023, leading up to and culminating in the search of Defendant's vehicle are not in dispute.  Defendant relies upon an affidavit in support of a search warrant which is not docketed in this matter.  The Government has submitted the Incident Report

from the day of the arrest – February 18, 2023. Regardless the source, both parties' narratives in terms of the events of that morning are largely identical.

At approximately 6:40a.m. on February 18, 2023, two West Haven police officers, Officer Roldan and Officer D'Ancicco, were dispatched to Lamson Street in response to a 911 call regarding a suspicious motor vehicle. More specifically, a named complainant had called the police to report that her ex-boyfriend was outside of her residence on Lamson Street and inside of his parked vehicle. She further reported that he had vandalized her current boyfriend's vehicle. Upon their arrival at the complainant's address, the officers observed a parked, running vehicle in front of the caller's residence on Lamson Street. The officers approached the vehicle and attempted to look inside but were unable to see into the vehicle through its tinted windows, despite the use of flashlights. Officer Roldan then opened the driver's side door and observed Defendant seemingly asleep in the driver's seat. Upon opening the door, Officer Roldan observed what appeared to be a gray and black firearm on the front passenger seat of the vehicle.

Defendant then tried to close the vehicle door, ignoring the officers' requests that he exit the vehicle. Officer Roldan attempted to restrain Defendant from closing the door; reaching for the firearm;[1] or reaching for the vehicle's gearshift. A struggle ensued. Defendant was able to put the vehicle in drive and attempted to accelerate. Officer Roldan was able to engage the emergency brake, which brought the vehicle to a stop. The officers then removed the still-resisting Defendant from the vehicle. Defendant was secured and placed in the marked police vehicle.

Thereafter, the officers returned to Defendant's vehicle and confirmed the presence of a firearm inside, on the passenger seat. A search of the vehicle was conducted, resulting in the

---

[1] The Incident Report includes the officers' perception that Defendant was, at various times during the struggle and until he was removed from the vehicle, reaching for the firearm on the passenger's seat.

seizure of the aforesaid firearm, as well as narcotics, ammunition, packaging materials, cash, and telephones.

**The Fourth Amendment**

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (quoting U.S. Const. amend. IV). "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "In most cases, reasonableness requires a warrant and probable cause." *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). Indeed, searches conducted without a warrant are "'*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Once a defendant with a reasonable expectation of privacy in the area searched challenges a warrantless search as unreasonable under the Fourth Amendment, the burden is on the government to demonstrate that the search was within one of the recognized exceptions." *United States v. Peña Ontiveros*, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 Fed. App'x 441 (2d Cir. 2011).

Relevant here, the "automobile exception" allows police to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). Therefore, if the probable cause justifying a search includes the entire vehicle, "the permissible scope of the search pursuant to this exception includes every part of the vehicle and its contents including all containers and packages that may conceal the object of the search."

*United States v. Wilson*, 699 F.3d 235, 246 (2d Cir. 2012) (internal quotations and citations omitted).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  Probable cause is assessed based upon the totality of the circumstances and may be found where a law enforcement official "has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *United States v. Howard*, 489 F.3d 484, 491 (2d Cir. 2007) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).  "[P]robable cause is a flexible, common-sense standard . . . [and] the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citation and internal quotation marks omitted).

The "plain view" doctrine is another recognized exception to the Fourth Amendment's warrant requirement.  "Under the plain-view exception, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).  "However, the 'plain view' doctrine cannot be invoked to justify an extended search; 'the doctrine is associated only with the seizure of items' that are—as the label indicates—in plain view." *Id.* (citing *Ruggiero v. Krzeminski*, 928 F.2d 558, 562 (2d Cir. 1991)).

**Discussion**

Defendant argues that the evidence seized as a result of the warrantless search of his vehicle on February 18, 2023 must be excluded because no exception to the Fourth Amendment's warrant requirement—including the automobile exception—applies under the circumstances presented. In response, the Government contends that the officers had reasonable suspicion to detain Defendant, and that the subsequent search of Defendant's vehicle was lawful. The Court agrees with the Government.[2]

### The *Terry* Stop – Reasonable Suspicion

Defendant asserts, without analysis or authority, that a Fourth Amendment violation occurred the moment the officers opened his car door. Specifically, he argues that the automobile exception (a probable cause analysis) does not apply because "[a]t the time West Haven Police Department officers approached Mr. Garro's vehicle and opened his door, they were only aware of a report of a suspicious vehicle—nothing further." *See* Motion to Suppress at 2–3. This argument is factually misguided and otherwise misses the mark. Defendant does not analyze the propriety of the officers' conduct as a *Terry* stop, and in fact does not cite or acknowledge *Terry v. Ohio* at all. *See* 392 U.S. 1, 30 (1968). But Fourth Amendment jurisprudence requires the Court, as a threshold matter, to determine whether Defendant's initial detention was lawful, *i.e.*, when the officers opened the car door and requested Defendant to exit the vehicle.

It is well-settled that "an officer may conduct a brief investigatory detention (commonly known as a "*Terry* stop") as long as the officer has reasonable suspicion 'that the person to be detained is committing or has committed a criminal offense.'" *United States v. Compton*, 830 F.3d

---

[2] The parties also dispute whether the evidence should be suppressed pursuant to the attenuation doctrine. This issue presupposes a constitutional violation in the first instance. Insofar as the Court has concluded herein that there was reasonable suspicion for the officers to conduct a *Terry* stop and that the subsequent search of Defendant's vehicle was otherwise lawful, the Court need not address the parties' arguments as to the attenuation doctrine.

55, 61 (2d Cir. 2016) (quoting *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014) and citing *Terry*, 392 U.S. at 30). In *Terry*, "the Court reasoned that investigative stops serve an essential governmental interest by enabling beat officers to take 'swift action predicated upon . . . on-the-spot observations,' thereby furthering the efforts of police officers to effectively detect and prevent crime." *United States v. Arenas*, 37 F. Supp. 2d 322, 327 (S.D.N.Y. 1999) (quoting *Terry*, 392 U.S. at 20). "The circumstances necessary to justify a *Terry* stop are a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" *Bailey*, 743 F.3d at 332 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)). "A reasonable basis requires more than a 'hunch.'" *Id.* (citing *Terry*, 392 U.S. at 27). "Rather, it demands specific and articulable facts which, taken together with rational inferences from those facts, . . . provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Id.* (citations and quotations omitted).

"In assessing the reasonableness of an officer's suspicion, [the Court] must take into account 'the totality of the circumstances' and must 'evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Compton*, 830 F.3d at 61 (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)). "Like probable cause, reasonable suspicion is a commonsense, nontechnical conception not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022) (citing *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996) (internal quotation marks and alterations omitted). Once a defendant has demonstrated a reasonable expectation of privacy in the place searched, the Government bears the burden of demonstrating the validity of a *Terry* stop. *See United States v. Antuna*, 186 F. Supp. 2d 138, 142 (D. Conn. 2002) (citing *United States v. Perea*, 986 F.2d 633, 644–45 (2d Cir. 1993)).

Here, the Government argues that based on the totality of the circumstances, the officers had reasonable suspicion to open Defendant's car door and temporarily detain him. *See* Gov't Opp. at 13–15. The Court agrees, and concludes that Defendant was lawfully detained pursuant to *Terry v. Ohio*. Indeed, regardless of when Defendant was seized for *Terry* purposes, the following, undisputed facts establish the officers' reasonable suspicion that criminal activity was afoot:[3]

Early in the morning of February 18, 2023, West Haven Dispatch received a suspicious vehicle report indicating that the complainant's ex-boyfriend—after vandalizing her current boyfriend's vehicle—was now sitting in a parked car directly outside of her residence on Lamson Street. Officers Roldan and D'Ancicco responded to the scene and discovered a car parked in front of the complainant's residence. The vehicle was running, thereby permitting the reasonable inference that somebody was currently inside of the vehicle. There is no suggestion that any other vehicles in the area were also running. The officers approached the vehicle, but despite their use of flashlights, they were unable to see inside due to its tinted windows. At that juncture, there was a reasonable basis for the officers to believe that an individual who had recently engaged in destructive criminal activity was inside of the vehicle.[4] As such, Officer Roldan opened the door and upon encountering Defendant, asked him to step out of the vehicle. Defendant initially

---

[3] The Government initially asserts that Defendant was not seized when the officers opened his car door and that therefore, the proper "moment of analysis" for *Terry* purposes is the time of Defendant's subsequent physical removal from the vehicle, during which he was unquestionably seized. *See* Gov't Opp. at 11–14. To the extent Defendant did not accede to the officers' authority when asked to exit the vehicle, the Government may be correct. *See United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) ("A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained."). However, because the Court concludes that the officers had reasonable suspicion to open Defendant's car door in the first instance—*i.e.*, at the earliest plausible "moment of analysis"—there was necessarily at least reasonable suspicion to subsequently remove Defendant from the vehicle after his attempt to flee the scene, and the Court need not determine whether such detention was the more applicable "moment of analysis" for *Terry* purposes. *See Terry*, 392 U.S. at 20 (investigative stop must be "justified at its inception").

[4] Though not yet known to the officers when they approached Defendant's vehicle, the complainant's report was, in fact, further corroborated by the presence of a vandalized vehicle located further up the block.

indicated an intention to comply with the officers' instruction, but moments later sought to flee the scene by putting the car into drive and accelerating. Consequently, a struggle with Officer Roldan ensued, and Defendant was eventually physically removed from the vehicle, handcuffed, and placed inside a nearby police vehicle.

The Court has little difficulty concluding that taken together, "the circumstances at the time of [Defendant's] seizure plainly supported reasonable suspicion to think that the as-then-unseen occupant[] of the detained [vehicle] w[as] the person[] who may have . . . engaged in the reported criminal activity." *Patterson*, 25 F.4th at 136; 138 n.15 (further reasoning that "a finding of reasonable suspicion is stronger here because the vehicle description and crime location came not from an anonymous tipster but from the identified crime victim herself"); *see also Bold*, 19 F.3d at 103 (reasonable suspicion supported a vehicle stop to investigate as-yet-unseen occupants, where location of a vehicle spotted by police matched an anonymous tip reporting armed criminal activity). Further, it was unquestionably reasonable for the officers to open the door of the vehicle, having failed to see though its tinted windows. *See Bold*, 19 F.3d at 103 (inability of responding officers to see inside a parked vehicle's darkly tinted windows was considered in finding "a sufficient basis under *Terry* for the officers to further investigate by opening the car doors and requesting the occupants to get out for questioning"); *Cummings*, 764 F. Supp. 2d at 506 ("It is also well-established that police officers, when approaching a person seated in an automobile, face an inordinate risk.") (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)); *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("The touchstone of the Fourth Amendment is reasonableness not bright-line rules.") (internal quotation marks and citation omitted). For these reasons, the Court finds that the officers possessed reasonable suspicion to open Defendant's car door and temporarily detain him as part of their investigation into suspected criminal activity.

The Search – Probable Cause

Having concluded that Defendant's initial seizure was supported by reasonable suspicion, the Court must next assess whether the ensuing search of Defendant's vehicle was lawful.

Here, the Government emphasizes that upon opening the door of Defendant's vehicle, a firearm was observed in plain view on the passenger seat and that cash was visibly tucked into the steering wheel.  *See* Gov't Opp. at 14–15.  As such, the Government contends that the officers' ensuing search of the vehicle was permissible.[5]  *Id.*  The Court agrees.  As an initial matter, Defendant does not dispute that upon opening the car door, Officer Roldan observed in plain view what he believed was a firearm on Defendant's passenger seat.  The incriminating nature of the firearm observed in plain view was "immediately apparent, [thus] justifying its seizure." *Green*, 2020 WL 5810011 at *3; *see also United States v. Levy*, 217 F. Supp. 3d 643, 668 (E.D.N.Y. 2016) ("defendant's gun was visible to anyone standing at the open door of the car, and the incriminating nature of the gun was immediately apparent to anyone observing it; . . .the officers had a lawful right to seize it.").  As a result, it was likewise reasonable for officers to thereafter conduct a warrantless search of Defendant's entire vehicle pursuant to the automobile exception.  Indeed, the officers had already lawfully observed that the inside of Defendant's vehicle was replete with evidence of criminal activity; specifically, the gun on the passenger seat and the wads of cash tucked into the steering wheel.  Defendant's efforts to close the door, thus shielding the inside of the vehicle from view; his effort to drive away; and his physical struggle with the officers

---

[5]  The Government suggests that the officers were also permitted to search the vehicle incident to Defendant's arrest.  But this argument is undeveloped, and the Court need not resolve it herein.  "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009).  And though the parties do not dispute that Defendant was beyond reaching distance of the passenger compartment at the time of the search at issue, it is unclear to what extent the officers reasonably believed that the vehicle contained evidence of Defendant's offense of arrest, which, prior to the search, could only have involved either his possession of the firearm or his attempt to flee.

9

further contribute to a probable cause determination. Indeed, combined with the complainant's report of Defendant's destructive and suspicious behavior, officers had probable cause to believe that Defendant's vehicle would contain additional contraband or incriminating evidence. *See Gaskin*, 364 F.3d at 456.

Accordingly, the Court concludes that the warrantless search of Defendant's vehicle was justified, and that the evidence seized from the vehicle should not be excluded.

**Conclusion**

For all of the foregoing reasons, the Motion to Suppress is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of July 2025.

        */s/ Kari A. Dooley*
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE